BOERSCH SHAPIRO LLP
David W. Shapiro (State Bar No. 219265)
Dshapiro@boerschshapiro.com
Martha Boersch (State Bar No. 126569)
Mboersch@boerschshapiro.com
Lara Kollios (State Bar No. 235395)
Lkollios@boerschshapiro.com
1611 Telegraph Ave., Ste. 806
Oakland, CA 94612
Telephone: (415) 500-6640

Attorneys for Defendant
PURVIS LAMAR ELLIS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>PURVIS LAMAR ELLIS, et al.<br><br>Defendants. | Case No. CR-13-00818 PJH<br><br>**DEFENDANT PURVIS ELLIS'S NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE SEIZED FROM APARTMENT 212 AND SUPPORTING MEMORANDUM AND DECLARATION**<br><br>Hearing Date: June 14, 2017<br>Hearing Time: 1:30 pm<br><br>Trial Date: TBD |

# TABLE OF CONTENTS

**NOTICE OF MOTION** ...................................................................................................................1

**MEMORANDUM OF POINTS AND AUTHORITIES**.................................................................1

**INTRODUCTION**...........................................................................................................................1

**FACTUAL BACKGROUND**.........................................................................................................3

    I.       Events Leading Up To The Searches ...............................................................................3

    II.      Mr. Ellis's Efforts to Inspect the Original Search Warrant and Affidavit .........................4

**ARGUMENT**.................................................................................................................................11

    I.       The Government Has Failed to Establish That the Searches Were Supported By A Valid Search Warrant.................................................................................................................11

    II.      The Three-Year Delay in Filing the Search Warrants Constitutes Grounds to Suppress Evidence Seized During The Searches ..............................................................................13

**CONCLUSION** .............................................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Katz v. United States*,
  389 U.S. 347 ............................................................................................................... 11

*People v. Bowen*,
  137 Cal. App. 3d 1020 (1982) .................................................................................... 14

*People v. Couch*,
  97 Cal. App. 3d 377 (1979) ........................................................................................ 14

*People v. Kirk*,
  99 Cal. App. 3d 89 (Cal. App. 1979) .............................................................. 14, 15, 16

*Schneckloth v. Bustamonte*,
  412 U.S. 218 (1973) .................................................................................................... 11

*Sgro v. United States*,
  287 U.S. 206 (1932) .................................................................................................... 13

*United States v. Towne*,
  997 F.2d 537 (1993) .................................................................................................... 14

**Other Authorities**

http://le.alcoda.org/publications/point_of_view/files/executing-search-warrants.pdf at 24 (last visited
  April 27, 2017 .............................................................................................................. 13

**Rules**

Penal Code § 1534 .............................................................................................................. 13

Penal Code § 1537 .............................................................................................................. 13

# NOTICE OF MOTION

TO: THE UNITED STATES OF AMERICA, PLAINTIFF; AND BRIAN STRETCH, ACTING UNITED STATES ATTORNEY; AND JOSEPH ALIOTO, ASSISTANT UNITED STATES ATTORNEY:

PLEASE TAKE NOTICE that on June 14, 2017, at 1:30 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Phyllis J. Hamilton, United States District Judge, defendant Purvis Ellis, by and through his counsel of record, Martha Boersch, will move this Honorable Court for an order suppressing evidence seized from apartment 212. This motion is based upon the attached Memorandum, the Declaration of Martha A. Boersch, all files and records in this case, and any further evidence as may be adduced at the hearing on this Motion.

# MEMORANDUM OF POINTS AND AUTHORITIES

# INTRODUCTION

For four years, Defendant Purvis Ellis has been asking for a fundamental piece of evidence in this case: the search warrant and warrant affidavit upon which the Oakland Police Department ("OPD") allegedly relied to search apartment 212 at 1759 Seminary Avenue, Oakland, CA. After four years of litigation, the government has failed to produce those warrants, because they do not exist. Because the government cannot demonstrate that the search of apartment 212 was in fact conducted pursuant to a valid search warrant, the evidence seized from that apartment must be suppressed.

While this motion focuses specifically on the search of apartment 212, the same argument that the government failed to meet its burden to show there was a legally authorized, warranted search also applies to the searches of apartments 108 and 110, which are listed on the same warrant as apartment 212, and apartment 112.

When Mr. Ellis was first charged in state court in early 2013 in connection with the search, his lawyer repeatedly requested the warrant. Under the threat of a motion to compel production of the warrant, the Alameda County District Attorney's office decided instead to dismiss the charges against Mr. Ellis.

Later that year, in December 2013, the federal government indicted Mr. Ellis and his three

codefendants for the same acts that gave rise to the state charges. Beginning in May 2014, defense counsel repeatedly asked the government to produce the warrant and affidavit for the search of apartment 212 (as well as other, related search and arrest warrants). After claiming that the delay was attributable to "dealing with the State system regarding the sealed SW affidavits," Declaration of Martha Boersch ¶ 9, **Exhibit D**, the government finally produced heavily redacted copies of warrant affidavits in December 2014 after being ordered by the Court to do so.

The defense continued to request copies of the original, file-stamped search warrant and, between August 2015 and February 2016, sent the government at least three requests to view it. Those requests culminated in an order from the Honorable Magistrate Judge Donna Ryu that the government work with defense counsel to find a way to view the original warrants. Despite that order, the government continued to claim that it was having trouble locating the original warrants and/or that the warrants were under seal in state court. We now know that was not the case, as the government recently claimed that "the original search warrants themselves [have been] in the Oakland Police Department files" the whole time, Boersch Decl. ¶ 35, **Exhibit O**, not under seal in any court file, as the government had told the defense (and the Court) on multiple occasions over the last two years.

After another order from Judge Ryu in August 2016, the government, on September 15, 2016, finally produced file-stamped copies of the arrest warrant for Mr. Ellis and the two search warrants for the apartments at 1759 Seminary Avenue. The date of the file stamp on each of the three warrants, however, was September 12, 2016, three days before they were produced to the defense. In other words, the government had simply taken the unfiled copies of the warrants and asked the state court to file-stamp them *post hoc*.

Still seeking the original warrants – and not copies that the government had had file-stamped in state court days before producing them to the defense – counsel for Mr. Ellis and Mr. Kincaid made multiple trips to various Alameda County courthouses seeking to obtain the original warrants from the court files, where the government had, for more than a year, represented they resided. Ultimately, each clerk at each courthouse informed counsel that the original warrants were not in that

clerk's file. One clerk provided counsel with a "copy" of a warrant, but that copy raised more questions than it answered, as it was unsigned by any judge and lacked a file stamp, leading to serious concerns regarding the ability to identify the actual warrant relied upon by OPD for the search.

In light of the conflicting representations from the government, and given that defense counsel has been provided with, at this point, multiple versions of copies of the warrants, none of which is the original signed and filed warrant, the government has failed to establish that the search of apartment 212, or any of the other locations allegedly searched under warrants in this case, was conducted pursuant to a valid warrant. The defendants therefore move to suppress all evidence, and the fruits of that evidence, seized under the authorization of the search warrants in this case.

## FACTUAL BACKGROUND

### I.  EVENTS LEADING UP TO THE SEARCHES[1]

On January 21, 2013, Oakland Police Department ("OPD") Officer Eric Karsseboom drove in an unmarked car without permission, consent, or a search warrant, down the private, gated driveway of the apartment complex located at 1759 Seminary Ave., Oakland, CA, and into the rear parking area of that building. Upon turning around and attempting to leave the drive, he found the gate was closed.

Officer Karsseboom was then allegedly confronted by several individuals who demanded to know who he was and what he was doing there. After those individuals saw a firearm sitting within reach of Officer Karsseboom, the conversation escalated into a physical altercation during which Officer Karsseboom claimed to have been hit in the head and shot in his left wrist before the individual fled. During the struggle, the suspects are alleged to have taken two pistols from Officer

---

[1] Aware of the Court's familiarity with the events in this case, the defense provides a brief summary of the events leading up to the searches for ease of the Court's reference. This summary is taken from the defendant's previously filed motion to suppress evidence seized from apartment 212. (Dkt. 81) The defense recognizes that the Court previously ruled on the legality of the searches in this case. Dkt. 143 at 12-14. But in that order, the Court's analysis was limited to whether the affidavit established probable cause for the search and whether the warrant itself was facially overbroad. Those issues are separate from the one raised in the instant motion: what legal document did OPD have in its hands when it conducted the search? The government has not yet answered that question.

3    MOTION TO SUPPRESS EVIDENCE
SEIZED FROM APARTMENT 212
Case No.: CR 13-00818 PJH

Karsseboom. Immediately after Officer Karsseboom was shot, the apartment building was surrounded by OPD, and remained that way the entire night of January 21 and the morning of January 22.

At some point during that night, OPD allegedly prepared a single search warrant for three separate apartments at 1759 Seminary Avenue: apartments 212, 108, and 110. Boersch Decl. ¶ 13, **Ex. E**. The search warrant was allegedly signed by a state court judge at 1:05 a.m. on January 22, 2013. *Id.* Early in the morning of January 22, 2013, OPD now claims to have discovered three handguns, including two belonging to Officer Karsseboom, in apartment 212.

## II. MR. ELLIS'S EFFORTS TO INSPECT THE ORIGINAL SEARCH WARRANT AND AFFIDAVIT

Prior to his federal indictment, Mr. Ellis was charged in a state court complaint dated January 24, 2013, with being a felon in possession of a firearm, in connection with the events underlying the current federal charges. Boersch Decl. ¶ 3. On March 19, 2013, the defense lawyer representing Mr. Ellis in the state-court proceedings filed a declaration in support of a motion for a *Franks*, *Luttenburger*, and/or *Hobbs* hearing. Boersch Decl. ¶ 4. In that declaration, Mr. Ellis's lawyer stated the following: on February 5, 2013, he asked the state to provide him with the Ramey Warrant for Mr. Ellis's arrest, the search warrant for apartment 212 at 1759 Seminary Avenue, as well as the supporting affidavits; on February 5, February 7, and March 13, the state assured Mr. Ellis's lawyer that it would provide those documents; and, as of March 19, Mr. Ellis's lawyer still had not received those documents, compelling him to file a motion. Boersch Dec. ¶ 4. Mr. Ellis's lawyer also stated in his declaration that it was his belief that the state had delayed providing the warrants and affidavits to him because the affidavits contained false information. Boersch Dec. ¶ 4; **Ex. A**.

On May 20, 2013, two months after Mr. Ellis's state court lawyer filed his motion, the state dismissed the criminal complaint against Mr. Ellis without providing the search warrant, arrest warrant, or warrant affidavits. Boersch Decl. ¶ 5; **Ex. B**. In December 2013, the federal government indicted Mr. Ellis for violations of RICO, VICAR, and illegal use of a firearm, based upon the same conduct for which Mr. Ellis was charged in state court. Boersch Dec. ¶ 5.

The government's initial production of discovery to the defense did not include copies of the search warrant affidavits and, although copies of the warrants themselves were produced, those warrants were not file-stamped. Boersch Dec. ¶ 6; **Ex. C**. On May 28, 2014, counsel for Deante Kincaid sent a discovery letter to the government requesting production of the search warrant affidavits. Boersch Decl. ¶ 7; **Ex. U**. On July 11, 2014, counsel for Mr. Ellis sent a discovery letter to the government requesting production of the search warrant affidavits. Boersch Decl. ¶ 8. On August 27, 2014, AUSA Frentzen informed Mr. Cannon that he was "dealing with the State system regarding the sealed SW affidavits." Boersch Decl. ¶ 9; **Ex. D**.

On November 18, 2014, the Court ordered the government to produce the redacted state court warrant affidavits. Boersch Decl. ¶ 11. On December 5, 2014, the government produced redacted copies of the search warrants affidavits, including the search warrant affidavit for Apartment 212. Boersch Dec. ¶¶ 12, 13; **Ex. E**.

On August 3, 2015, Mr. Ellis requested that the government produce the original search warrants and affidavits that had (allegedly) been signed and filed in state court (so that the defense could view those originals), as well as the file-stamped copy of the search warrant for Apartment 212. Boersch Decl. ¶ 14. On September 18, 2015, counsel for defendant Kincaid sent a letter to the government reiterating the defense request for the original warrants and affidavits and file-stamped copies of all warrants and affidavits. Boersch Decl. ¶ 15.

On February 17, 2016, defense counsel sent the government a discovery letter that reiterated the defense request for the original or certified copies of the original search warrants and affidavits. That letter set forth the defense concerns with the search warrants:

> The defense requested warrants, affidavits, Orders, and applications related to this case years ago. It took months to get some of the warrants and Orders, and almost one year for the government to produce the underlying affidavits and applications, allegedly so that it could lift an order sealing those documents in state court. The defense has serious concerns regarding the authenticity of the warrants, affidavits, Orders, and applications produced, and requested the original documents or certified copies from the Alameda County Superior Court. The items produced are inconsistent, as they do not all bear court file stamps, and the Alameda Superior Court has reported to the defense that one Order and application could not be located. The items that the state court

located remain under seal, even though the government's excuse for the long delay in producing the items it has produced was so that it could lift the seal. The defense has drafted a joint stipulation and proposed Order and submitted it to the government for review. The stipulation and proposed Order asks this Court to make a formal request for the documents under seal in the state court in order to compare them with the documents provided by the Oakland Police Department to government and provided to Judge Hamilton.

Boersch Decl. ¶ 16.

On that same date, the government informed the court that it had "produced to the defense copies of what it received from the state court" and that it was "working with the defense to obtain another copy of the materials in question from the state court in order to address the defendants' concerns." Boersch Decl. ¶ 17 (quoting Dkt. 158).

At the status conference on March 7, 2016, AUSA Alioto made the following representations regarding the government's efforts to obtain "unsealed" versions of the warrants and affidavits:

> The United States went back and sought to have the warrants and the affidavits disclosed. They were under a sealing order by the State Court. Those were unsealed through the -- by the District Attorney's Office in Alameda County. The District Attorney then produced to us copies of the warrants, and we produced those with redactions to the Defendants. Some of them are file stamped. Some of them are not. That's what we received from -- from them after the sealing order was obtained.
>
> I think that, as we indicated in our letter, we're happy to continue to work with the Defendants to try to find file stamped copies. I think that the challenge that the Defendants are making is that an officer with the Oakland Police Department forged the warrant. That's the challenge. There's no basis for that.

Boersch Decl. ¶ 18; **Ex. F** at 40 9:24.

On March 31, 2016, Magistrate Donna Ryu ordered the government to propose a protocol for the defendants to examine the original state court warrants and affidavits. Boersch Dec. ¶ 19; Dkt. 163. On April 1, 2016, Mr. Ellis sent another discovery letter to the government reiterating the defense request to view the original search warrants and affidavits and for file-stamped copies of the search warrants and affidavits. Boersch Decl. ¶ 20.

On August 2, 2016, the government informed the Court as follows:

> The defendants also contend that the state court warrants issued in this

> case were altered or forged. Their conclusion is premised on the fact that some of the warrants produced do not contain a "file stamp." The defendants have sought access to the original affidavits and warrants. However, as the Court recognized at the March 7, 2016 hearing, to the extent that the warrants contain court-approved redactions under *Roviaro*, it is not possible to permit inspection of the original warrants.
>
> On March 10, 2016, three days after the March 7, 2016 hearing, the government contacted the Alameda County District Attorney and requested that the files associated with the search warrants be immediately produced in full – with file stamps – and with each page certified by the state court. Despite diligent efforts by the government to obtain these full files of the warrants, the deputy district attorney with whom the United States was working was involved in a lengthy murder trial at the time. After a number of attempts, the United States finally received certified copies of four of the five state court warrants and affidavits on or about July 8, 2016.
>
> Upon review of these certified copies, the government discovered that only one of the warrants was a copy of an original signed warrant. Three of the four warrants are marked "copy" and are unsigned by the issuing judge. Some of the affidavits associated with them are file-stamped, but are similar or identical to those already produced.
>
> In light of this unfortunate development, counsel for the United States has sought to obtain permission from the State Court clerk directly to review the original files located within the Clerk's office. This is an unusual request and one that, in counsel's experience, is unprecedented. Nevertheless, counsel for the government is currently attempting to work out the details with the State Court clerk so that an original copy of the warrants – if they exist within the clerk's files – can be viewed by counsel for the United States and, if possible, obtained, redacted and produced.

Boersch Decl. ¶ 21 (quoting Dkt. 206 at 2-3).

On August 8, 2016, Magistrate Donna Ryu ordered the parties to meet and confer regarding the warrants and that the government "continue its efforts to obtain complete state court warrant packets" to produce to the defendants. Boersch Decl. ¶ 22 (quoting Dkt. 215 and 215-1).

On September 15, 2016, almost three years after the indictments, the government produced *post hoc* file-stamped copies of the search warrants and the arrest warrant. The date of the file stamp on each of the three warrants was September 12, 2016, three days before they were produced to the defense. Boersch Decl. ¶ 23 Ex. **G**.

In an email to defense counsel dated October 12, 2016, AUSA Alioto stated the following

regarding the warrants: "The original warrants were returned to the Courthouse, file stamped, and produced to you. So, you now have the copies of all the file-stamped documents you requested." Boersch Decl. ¶ 24; **Ex. H.** In response to AUSA Alioto's email, counsel for Deante Kincaid and Mr. Ellis both sent emails to the government highlighting our concerns that the government still had not provided the defense with a manner in which to view the original warrants. Boersch Decl. ¶ 25; **Ex. I**.

Two days later, on October 14, 2016, AUSA Alioto responded via email stating the following:

> When you say "even if those "originals" are just copies," I'm not clear about what you want to see. We have produced the warrants twice. The first time we produced scans early in the case without file-stamps. Those were scans of the original warrants that were in the OPD file that had not yet been returned to the Court. The originals were returned to the Court and the file-stamped copies of those were also produced, a couple months ago.
>
> I understood your request was for file-stamped copies, which is why we returned them to the Court to get stamped.
>
> So, at this point, if I understand it correctly, the only versions we have are the same versions you have: scans of the warrants without the file-stamp and scans of the warrants with the file-stamp.
>
> The originals are now with the Court.
>
> Please clarify what you are looking for and we can go from there.

Boersch Decl. ¶ 26; **Ex. J**.

On October 19, 2016, undersigned counsel for Mr. Ellis sent an email to AUSA Alioto stating the following:

> Joe – we would like to see the warrants that you originally received from OPD. If those are the ones that you returned to the court to get file-stamped, we would like to see those. Please also tell us the chain of custody on those documents over the last several years. If you have a case or file number so we can locate the documents in the Superior Court, we can just go down there ourselves. Otherwise, please make whatever arrangements need to be made for us to view the original warrants you received from OPD.

Boersch Decl. ¶ 27; **Ex. K**.

In response to that email, the government sent an email to defense counsel on October 19,

2016, stating that it would let the state court clerk know that the defense wanted to view the original warrants and that it would provide the defense with contact information for the state court clerk. Boersch Decl. ¶ 28. On October 25, 2016, counsel for Mr. Ellis sent another letter to the government summarizing and reiterating outstanding discovery requests, including the defense requests for the originals of each search warrant and affidavit and file-stamped copies of the search warrant and affidavit for Apartment 212, and noting that the government had not followed up on its previous commitments regarding the warrants and affidavits. Boersch Decl. ¶ 29.

On Wednesday, November 30, 2016, undersigned counsel for Mr. Ellis saw AUSA Alioto in court and asked him about the status of the government's commitment to ensure that the defense was able to view the original warrants. Later that day, AUSA Alioto sent an email to Karen Foss, a clerk at the Alameda County Superior Court. In that email, AUSA Alioto stated the following:

> Ms. Foss,
> I am cc'ing Martha Boersch who represents one of the defendants in our case. She is the one who is interested in reviewing the original warrants we've been discussing. I am going to leave it to you two to figure out a convenient date to review the warrants at the Courthouse. Just so we are all on the same page, the defendants are only reviewing the warrant face sheets. The affidavits are still sealed and should not be reviewed.
>
> Many thanks to you both,
> Joe

Boersch Decl. ¶ 30; **Ex. L**.

Undersigned counsel for Mr. Ellis then emailed Ms. Foss on December 1, 2016, asking if defense counsel could schedule a time with her to view the original warrants. Counsel for Mr. Ellis did not receive a response from Ms. Foss and emailed her again on December 6, 2016, with the same request. Boersch Decl. ¶ 31; **Ex. M**.

After Mr. Ellis's counsel's December 6, 2016, email to Ms. Foss, she received a response from Ms. Foss stating the following:

> Hello Ms. Boersch. I apologize for not getting back to you sooner. We have been really busy here and I have been moving all over the place. I have to enlist the assistance of my supervisor for your request because my daily assignment fluctuates. I'm going to forward your email to her

and hopefully she will be in contact with you soon. If not, please feel free to get back in touch with me and I will follow up.

Boersch Decl. ¶ 32; **Ex. N**.

Counsel for Mr. Ellis received no further email communications from any clerk at the Alameda County Superior Courts regarding the request to view the original warrants and so, on December 9, 2016, counsel for Mr. Ellis went to the Renee C. Davidson Courthouse to request to see the original search and arrest warrants. Boersch Decl. ¶ 33. At the superior court, counsel asked to see the file for case number 172136 A-C, which was the state court case against Deante Kincaid, Joseph Pennymon, and Damien McDaniel, Mr. Ellis's co-defendants in the present federal case. That file contained copies of four warrants. Boersch Decl. ¶ 33; **Ex. O**. Neither the search warrant for apartments 108, 110, and 212 nor the arrest warrant for Mr. Ellis contained a file stamp. *Id.* The search warrant for apartment 212 and the other apartments was not signed by any judge. *Id.* Both warrants contained hand-written warrant numbers – 2013/0137 for the search warrant and 2013/1871 for the arrest warrant – and contained a handwritten "Copy" in the top left corner of each.[2] *Id.* The third search warrant, for the search of a 2012 Chevrolet Malibu, contained two file stamps, dated February 4, 2013, and February 5, 2013. *Id.* The final search warrant, for a 2012 white Dodge Avenger, was filed-stamped January 25, 2013. *Id.*

Counsel for Mr. Ellis asked the clerk who provided the copies of the warrants to also permit counsel to see the original warrants. Boersch Decl. ¶ 34. She informed counsel that the originals were kept at the Wiley W. Manuel Courthouse. Boersch Decl. ¶ 34.

At the status conference on February 1, 2017, AUSA Alioto made the following statements regarding the search warrants:

> Let me let the court know what's going on here. The --The original searches that were done were -- were done pursuant to search warrants that were executed by the State courts. And those search warrants were then used. A number of different evidentiary items were found pursuant to those searches. And the officers did not return the search warrant to the court for stamping -- for file stamping. And what the -- And what

---

[2] The affidavit for the arrest warrant produced by the government contained yet a different number, 2013-0142. RD-003412.

> we ended up finding was that the original search warrants themselves
> were in the Oakland Police Department files. So those search warrants
> were then returned to the courts -- to the courts and were file stamped,
> and then those were produced to the defendants.
>
> And so the return of those -- the late return of those warrants is what
> they're talking about. And that's about a one-paragraph opposition on
> our part, because there's well-established law that the return of the
> search warrant really has no impact on whether or not the search
> warrant was -- was properly -- was properly executed.

Boersch Decl. ¶ 35; **Ex. P** at 18 1:18.

On March 16, 2017, counsel for Mr. Ellis went to the Wiley W. Manuel Courthouse to see if they could view the original search warrants. Boersch Decl. ¶ 36. After waiting for approximately one hour, they were told by the clerk assisting them that he searched the court's files of original warrants, which is kept in a locked room in the basement of the court, and that the clerk could not locate any original search warrant with the number 2013/0137, the number on the search warrant for the apartments at 1759 Seminary Avenue that counsel had obtained from the clerk at the Renee C. Davidson Courthouse. *Id.*

## ARGUMENT

The evidence seized from apartment 212 and under all the search warrants allegedly obtained should be suppressed because the government has failed to establish that the searches were conducted with valid search warrants. In the alternative, suppression is warranted given the extraordinary delay – more than three years – between when the search occurred and when the search warrants were filed with the court.

### I. THE GOVERNMENT HAS FAILED TO ESTABLISH THAT THE SEARCHES WERE SUPPORTED BY A VALID SEARCH WARRANT

"It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is 'per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (*quoting Katz v. United States*, 389 U.S. 347, 357). The government bears the burden of proving that a valid warrant supported the search. It has not and cannot satisfy that showing in this case.

1    For four years, Mr. Ellis and the other defendants have sought an opportunity to inspect the
2    original warrant and affidavits in this case.  The Alameda County DA's office opted to dismiss the
3    charges against Mr. Ellis instead of producing a copy of the warrant and affidavit.  After the federal
4    government indicted him, and he again requested the warrant and affidavit, it claimed that it couldn't
5    produce them because it was "dealing with the State system regarding the sealed SW affidavits."
6    Boersch Dec. ¶ 9; **Ex. D.**  Over the next year, the defense repeatedly requested to see the original
7    warrant and affidavit, and on two separate occasions Magistrate Judge Ryu ordered the government
8    to assist the defense in obtaining the original warrant and affidavit.  The government continued to
9    insist that it was trying to obtain them but having trouble because the warrant and affidavit were
10   allegedly under seal in the state court clerk's file.

Eventually, undersigned counsel for Mr. Ellis and counsel for Mr. Kincaid independently made several trips to Alameda County courthouses searching for the warrants and affidavits, only to be told by the clerk at each court that the original warrants and affidavits were not in any of the courts' files.  The defense soon learned why. According to the government, the warrant and affidavit had allegedly been in the custody of OPD all along.

Even if that is the case – the defense has no way of knowing whether this representation by the government is true, given the government's previous representations that the warrants were in the state court clerks' files under seal – the government still has not established that OPD was in possession of a particular search warrant *at the time of the search*.  In other words, because an original search warrant, signed by the judge and file-stamped at or near the time of the search does not exist, the government cannot prove that that particular signed warrant and affidavit were in OPD's hands when it executed the search.

This is especially troubling given that the defense has been provided and/or obtained different versions of the search warrant.  The copy produced by the government is file-stamped September 12, 2016, long after the search.  Boersch Decl.**; Ex. G** (RD 004924).  The copy defense counsel obtained from the court is not file-stamped nor is it signed by any judge.  Boersch Decl.; **Ex. O**.  The copy defense counsel obtained from the court contains a handwritten warrant number on it.  *Id.*  The copy

1  produced by the government does not. Boersch Decl.; **Ex. G**. Finally, the copy obtained from the
2  court contains, in small letters underneath the state seal in the upper right-hand corner, the words
3  "The Great Seal," while the copy produced by the government has no writing in that location.
4      In sum, the government cannot demonstrate that OPD possessed specific, signed search
5  warrants at the time of the searches. Absent that showing, all evidence seized during the searches
6  should be suppressed.

## II. THE THREE-YEAR DELAY IN FILING THE SEARCH WARRANTS CONSTITUTES GROUNDS TO SUPPRESS EVIDENCE SEIZED DURING THE SEARCH

As the Supreme Court has recognized, "proceeding by search warrant is a drastic one." *Sgro v. United States*, 287 U.S. 206, 210 (1932). "Its abuse led to the adoption of the Fourth Amendment, and this, together with legislation regulating the process, should be liberally construed in favor of the individual." California requires law enforcement to file a search warrant with the issuing court within ten days after the search is executed. Penal Code § 1534 ("(a) A search warrant shall be executed and returned within 10 days after date of issuance.") Further, the officer responsible for the warrant "must forthwith return the warrant to the magistrate, and deliver to him a written inventory of the property taken . . . ." *Id.* § 1537. The Alameda County District Attorney's protocols for search warrants expressly acknowledge those requirements:

> When the search is completed, the usual procedure is as follows.
>
> [. . . .]
>
> RETURN WARRANT: Within ten days after the warrant was issued, the original signed warrant must be filed with the issuing judge (i.e., "returned") along with a sworn inventory of all seized property. In calculating the ten-day period, do not count the day on which the warrant was issued. If the tenth day falls on a weekend or holiday, the warrant may be returned on the next court day. Failure to make a timely return will not invalidate the search unless the delay was prejudicial to defendant.

http://le.alcoda.org/publications/point_of_view/files/executing-search-warrants.pdf at 24 (footnotes omitted; last visited April 27, 2017).

//

"The return on a search warrant is an important part of the process." *People v. Kirk*, 99 Cal. App. 3d 89, 93 (Cal. App. 1979). "It protects the individual's property which has been seized, it provides the accused with access to knowledge of what was seized, it requires the authorities to promptly come forward and officially disclose what was seized, and it provides for an immediate check by the impartial magistrate on whether the search was excessive." *Id.*

Typically, the return requirement is deemed ministerial, and the failure to strictly adhere to it does result in the suppression or exclusion of evidence derived from the search. *United States v. Towne*, 997 F.2d 537 542 n.3 (1993) ("California courts uniformly recognize that statutory provisions covering the filing and return of a search warrant are ministerial in nature, the violation of which does not in itself invalidate an otherwise lawful search or require suppression of evidence seized thereby, at least in the absence of demonstrated prejudice to the defendant."); *People v. Bowen*, 137 Cal. App. 3d 1020, 1034 (1982) ("Even were we to find a violation of section 1534, it would not raise an issue of constitutional magnitude and would not result in the suppression of evidence absent a showing of prejudice to the defendant."). Nonetheless, these cases recognize an important caveat: if the defendant is prejudiced by the failure to "return" the warrant within the 10-day time limit, suppression may be appropriate. *See also People v. Couch*, 97 Cal. App. 3d 377, 381 (1979) (holding that the "untimely return of an otherwise validly executed search warrant requires the suppression of the evidence seized pursuant to the warrant only if the accused demonstrates he was in any way prejudiced by the delay in returning the warrant."); *Kirk*, 99 Cal. App. 3d at 94 ("Where there is a good cause for a delay, and absence of a showing of prejudice because of the delay, the failure to file return of an otherwise validly executed search warrant within the statutory period cannot be deemed a violation of constitutional dimensions, and does not give rise to the remedy of suppression.").

In the present case, there was no good cause for the almost four-year delay in the return of the warrants. That delay, coupled with the inconsistent explanations, and inconsistent purported warrants, leads to the conclusion that that the government has not proven the searches were warranted. In addition to the inability to prove the warrants and affidavits actually exists, if the government can

somehow meet that burden at this time after not having been able to prove that it has possessed the warrants for four years, the delay in producing the warrants has prejudiced, and continues to prejudice, Mr. Ellis and all the defendants in this case. Counsel has been compelled to expend a substantial amount of time trying to track down (unsuccessfully so far) the original search warrant and affidavit. Through the superior courts in Alameda and from the government, counsel has obtained and been provided with various copies of the warrant, but, as discussed above, those copies are inconsistent with the ones produced by the government.

Further, different inventories from the search of apartment 212 list different items. As just one example, one officer's report, in a section titled "Evidence collected by me in the apartment [212]," does not indicate that *any* firearms were recovered in apartment 212. Boersch Decl.; **Ex. Q**. Nor does the search warrant inventory from apartment 212 contain any mention of any guns. Boersch Decl.; **Ex. G**. Yet another report indicated that firearms were recovered from that apartment. Boersch Decl.; **Ex. R**. Still another report from an OPD technician claims that he was given three guns by another officer who claimed to have removed them from apartment 212 and who told the technician not to take any crime scene photos inside of apartment 212. Boersch Decl.; **Ex. S**. Finally, an OPD property report listing the items purportedly seized from apartment 212 does not contain any mention of any guns and OPD left a blank warrant on the table in the apartment after searching it. Boersch Decl.; **Ex. T**; Dkt. 81-1 at 12.[3]

All of those discrepancies represent precisely the type of confusion and uncertainty that the return requirement was designed to prevent. *See*, *e.g.*, *Kirk*, 99 Cal. App. 3d at 93 (noting that the return on a search warrant "protects the individual's property which has been seized, . . . provides the accused with access to knowledge of what was seized, . . . requires the authorities to promptly come forward and officially disclose what was seized, and it provides for an immediate check by the impartial magistrate on whether the search was excessive.").

---

[3] The inclusion of apartment 108 on the search warrant is worth noting. According to the CAD reports produced by the government, apartment 108 wasn't designated as an apartment to be searched until 12:57 a.m. on January 22, 2013, and yet somehow that apartment was included on the warrant signed by Superior Court Judge Horner at 1:05 a.m., eight minutes after being called in on the CAD. RD 00381.

The almost four-year delay on the return of the search warrants prejudiced Mr. Ellis and the evidence seized from the search should be suppressed. *Compare Kirk*, 99 Cal. App. 3d at 96 ("While the late return of the warrant created a defect, there was good cause for the delay in making the return, and defendant neither showed nor asserted he was prejudiced by the delay; thus the remedy of suppression of evidence was not available.")

## CONCLUSION

For the reasons discussed above, Mr. Ellis respectfully requests that the Court suppress all evidence seized in apartment 212 at 1759 Seminary Avenue, Oakland and all defendants request the suppression of all the evidence seized pursuant to the warrants that the government has not shown exist.

Dated: May 1, 2017

                                     */s/ Martha Boersch*
                                     Martha Boersch
                                     Attorney for Defendant
                                     PURVIS LAMAR ELLIS