BOERSCH SHAPIRO LLP
David W. Shapiro (State Bar No. 219265)
Dshapiro@boerschshapiro.com
Martha Boersch (State Bar No. 126569)
Mboersch@boerschshapiro.com
Lara Kollios (State Bar No. 235395)
Lkollios@boerschshapiro.com
1611 Telegraph Ave., Ste. 806
Oakland, CA 94612
Telephone: (415) 500-6640

Attorneys for Defendant
PURVIS LAMAR ELLIS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| UNITED STATES OF AMERICA, | Case No. CR-13-00818 PJH |
|---|---|
| Plaintiff, | **DEFENDANT PURVIS ELLIS'S REPLY TO MOTION TO SUPPRESS EVIDENCE SEIZED FROM APARTMENT 212** |
| v. | |
| PURVIS LAMAR ELLIS, *et al.* | Hearing Date: August 2, 2017 |
| Defendants. | Hearing Time: 1:30 pm<br>Judge: Honorable Chief Judge Phyllis Hamilton<br>Trial Date: TBD |

## INTRODUCTION

The basis for Defendant Purvis Ellis's Motion to Suppress Evidence Seized from Apartment 212 (Dkt. No. 307, "Motion to Suppress") is a simple one: the government has failed to prove that valid warrants existed at the time of the searches, including the search of apartment 212.

Over the last two years, the defense has made multiple requests to inspect the original search warrants. By originals, as repeatedly made clear to the government, the defense means the "wet-signature" documents that were actually signed.[1] In the case of the search warrant for apartment 212, the signing judge was Alameda County Superior Court Judge J.W. Horner.

There is nothing controversial nor extraordinary about that request. Nonetheless, the government has studiously refused to make the original wet-signature search warrants available. After multiple defense requests for these documents, this Court referred the matter to Magistrate Judge Donna Ryu. More than a year ago, she ordered the government to facilitate the inspection of the original warrants. Despite that order, the government continues to refuse, either because it is unwilling or unable to comply with Judge Ryu's order.

In its opposition to the instant motion to suppress, the government concedes as much and instead argues that the copies of the warrants it has produced should suffice. They do not, for the following reason: the government bears the burden of proving the legality of the search of apartment 212. To carry that burden, the government must show that a valid search warrant was issued by a court. The government has pointed to various copies of the purported search warrant (*i.e.*, none of which are file stamped,[2] and one that is simply blank). But the only way for the government to conclusively establish that the original warrant signed by Judge Horner and filed in state court existed at the time of the search is to allow the defense to inspect that original document.

The government points to a photograph of a warrant that was left by the Oakland Police

---

[1] *Cf. In re Arin*, No. 13-105272014, Bankr. LEXIS 1093, at *4 (Bankr. N.D. Cal. Mar. 12, 2014) ("Court rules provide that when a sworn document is filed electronically by an attorney the attorney must maintain the original 'wet' signature and produce it when required.").

[2] More than three *years* after the search of apartment 212, on September 12, 2016, the government took its copy of the purported warrant to state court and asked the clerk to file-stamp that copy. That post-hoc manipulation of the document is precisely why the defense must be provided the original signed warrant.

1 Department ("OPD") in apartment 212 during the search as proof that an actual warrant existed at the
2 time of the search. That picture raises more questions than it answers. (True and correct copies of
3 that photograph are attached as Exhibit A to this brief.) Most obviously, the warrant, although
4 apparently signed by Judge Horner, is blank. Ex. A. If Judge Horner signed a blank warrant, the
5 warrant was overbroad and therefore invalid under the Fourth Amendment. Everything seized as a
6 result of the search would need to be suppressed. Moreover, the property inventory sitting to the left
7 of the warrant in the picture is from apartment 108 (compare with Exhibit B), not apartment 212.

Nothing in the government's opposition alters that fact or justifies the government's refusal to allow the defense to inspect the original wet-signature warrants. Given that the government has not been able to produce the original warrants, it has not proven that valid warrants existed at the time of the searches. Suppression is required.

**STATEMENT OF FACTS**

The government's statement of facts merits several brief responses. In attempting to explain the extraordinary delay in producing copies of the search warrants, the government claims that it was "responding to a very high number of discovery demands . . . ." (Gov't Opp'n, Dkt. 322, at 3.) The "high number" was a mere ten categories of issues, all of them routine discovery items for a case such as this, including, for example, the search warrants and affidavits, the search warrants and extracts for the cell phones, chain of custody documents, gang task force files, etc. (*Id.*) Nothing in that small number of discovery requests justifies the delays in the production of the warrants.

The government asserts that the defense made "no showing of materiality" on certain discovery requests, including cell-phone records from OPD. (Gov't Opp'n at 4.) That claim is false. As just one example, after the defense sought personal the cell phone records from OPD and the government argued that those records were immaterial, Judge Ryu expressly rejected the government's argument and concluded the records were material. (Dkt. 207.) The government then filed three separate motions challenging Judge Ryu's conclusion, all of which were rejected by Judge Ryu and this Court. (Dkt. 223, 266, 281.)

Also worth emphasizing is the shifting narrative the government has offered on the location of

1 the search warrants. Beginning August 2015, the defense requested original copies of the search
2 warrants. (Mot. to Suppress, Dkt. 307, at 5.) Receiving no response, the defense made that request
3 again in February 2016. (*Id.* at 6.) In February and March 2016, the government claimed it was
4 working to "find file stamped copies" and to obtain them from state court. (*Id.*) On March 31, 2016,
5 Magistrate Ryu ordered the government to propose a protocol for the defendants to examine the
6 original state court warrants and affidavits, (Dkt. 163), and in April 2016, Mr. Ellis sent another
7 discovery letter to the government reiterating the defense request to view the original search warrants
8 and affidavits and for file-stamped copies of the search warrants and affidavits. (Mot. to Suppress at
9 6.) In August 2016, the government claimed to have been working diligently (since February
10 apparently) to obtain the warrants from state court only to learn that "only one of the warrants was a
11 copy of an original signed warrant," and "[t]hree of the four warrants are marked 'copy' and are
12 unsigned by the issuing judge. (Mot. to Suppress, (quoting Dkt. 206 at 2-3).) The government
13 concedes this in its opposition, stating that at the August 2016 hearing, the government informed the
14 Court that "none of the [warrants] were in the United States' possession . . . ." (Gov't Opp'n at 4.)
15 One month later, the government admitted that "the original warrants were located in the Oakland
16 police files in *FBI custody* . . . ." (*Id.* at 4 (emphasis added).)

## ARGUMENT

### I. THE GOVERNMENT STILL REFUSES TO ALLOW INSPECTION OF THE ORIGINAL WARRANTS

20 The government claims that the search warrant for apartment 212 "has already been
21 demonstrated." (Gov't Opp'n at 6 (bold removed).) That careful and odd phrasing confirms that the
22 government has yet to produce the original, wet-signature of any of the warrants. At this point, the
23 defense can only conclude that the originals do not exist.
24 The government claims OPD Officer Milina left a so-called "redacted" warrant in the
25 apartment, which, according to the government, proves that a valid warrant existed at the time of the
26 search. (Gov't Opp'n at 6-7.) The government argues that the "redacted" warrant is "the same" as
27 the copy produced to the defense. (*Id.* at 7.) The signature and signature block may be the same but

the warrants are materially different in one crucial respect: the warrant left at the apartment is blank, and the one produced to the defense lists the items to be seized. The blank warrant contains no indications of redaction: no blacked-out areas, no carefully circumscribed black or white squares in place of text, and nothing else that the government and OPD have used to liberally redact material throughout the pendency of the case.

If the warrant was indeed blank, it was illegal, and all evidence seized as a result of the search must be redacted. To withstand constitutional scrutiny, a warrant must particularly describe the place to be searched and the things to be seized. *Groh v. Ramirez*, 540 U.S. 551, 557 (2004). A particular warrant prevents general searches, and "assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *Id.* at 561 (citation and internal quotation omitted). The items to be seized must be described with particularity in the warrant itself. *Id.* at 557; *United States v. Clark*, 31 F.3d 831, 836 (9th Cir. 1994) ("search warrant must allege with reasonable particularity the types of items that may be seized") (*citing United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986)); *United States v. Cardwell*, 680 F.2d 75, 77 (9th Cir. 1982) (purpose of the constitutional requirement of specificity for search warrants is to prevent law enforcement from engaging in general, exploratory searches with no limits on their discretion).

The government must prove that a valid warrant existed at the time of the search of apartment 212. It has not done so. The only way for the defense to confirm that the warrant was redacted, and not simply an illegal blank warrant, is to inspect the original one that Judge Horner actually signed. Almost four years after indicting the defendants, and more than a year after being ordered by Magistrate Ryu to do so, the government has refused to permit that to occur. The evidence seized from apartment 212 should be suppressed as a result.

Finally, even if the government were to finally produce a wet-signature original warrant, the Court nonetheless should suppress the evidence seized from apartment 212 given the government's extraordinary dilatory tactics.

//

## II. MR. ELLIS HAS BEEN PREJUDICIED BY THE GOVERNMENT'S ALMOST FOUR-YEAR DELAY IN COMPLYING WITH STATE-LAW REQUIREMENTS FOR WARRANTS

"Where there is a good cause for a delay, and absence of a showing of prejudice because of the delay, the failure to file return of an otherwise validly executed search warrant within the statutory period cannot be deemed a violation of constitutional dimensions, and does not give rise to the remedy of suppression." *People v. Kirk*, 99 Cal. App. 3d 89, 94 (1979). As established in Mr. Ellis's motion to suppress, there is no good cause for the government's almost four-year delay in returning the warrants. The government concedes as much.

That delay has prejudiced all the defendants by forcing them to spend substantial time and resources litigating this issue over the last several years. Furthermore, the defendants have remained in pretrial detention, with Mr. Ellis being held in solitary confinement for most of that time.

The delay has also magnified the uncertainty and discrepancies surrounding the warrants, including but not limited to the fact that in only one of his three written reports did OPD Officer Milina claim to have found the guns in apartment 212. The government attempts to minimize those inconsistencies but one would assume that the recovery of three blood-stained pistols, two of which belonged to a recently-shot colleague, would not be so easily forgotten when writing reports of the incident. The return requirement is designed to eliminate those issues. *Kirk*, 99 Cal. App. 3d at 93.

The government claims it has "suffered two-fold" from defense counsel's efforts at trying to inspect an original warrant. (Gov't Opp'n at 8.) That's a peculiar assertion from an inanimate institution, especially given that it took the government three and a half years to realize that (i) the warrants were never returned and (ii) copies of the warrants have been in the government's possession the whole time. Any suffering experienced by the government is of its own making.

Finally, the government claims that no California court has found prejudice from the failure to return a warrant within the ten-day statutory period. That may be true, but none of the California cases cited by the government deal with a delay as substantial as the one in the instant case. The longest delay addressed was one year. *People v. Head*, 30 Cal. App. 4th 954, 957 (1994). The other cases cited by the government dealt with delays of two days (*People v. Couch*, 97 Cal. App. 3d 377

(1979)) and 55 days. *People v. Kirk*, 99 Cal. App. 3d 89 (1979). If a delay of four years does not constitute prejudice justifying suppression, then the warrant-return requirement is meaningless.

## CONCLUSION

Mr. Ellis respectfully requests that the Court suppress all evidence seized in apartment 212 at 1759 Seminary Avenue, Oakland and all defendants request the suppression of all the evidence seized pursuant to the warrants that the government has failed to establish were legally valid at the times of the searches and seizures.

Dated: July 19, 2017

BOERSCH SHAPIRO LLP

 _/s/ Martha Boersch_____
Martha Boersch

Attorney for Defendant
PURVIS LAMAR ELLIS