BRIAN J. STRETCH (CABN 163973)
United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

JOSEPH M. ALIOTO JR. (CABN 215544)
SCOTT D. JOINER (CABN 223313)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    Joseph.Alioto@usdoj.gov
    Scott.Joiner@usdoj.gov

Attorneys for United States of America

FILED
SEP 21 2017
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 13-818-001 PJH |
| Plaintiff, | PLEA AGREEMENT |
| v. | |
| PURVIS LAMAR ELLIS, | |
| Defendant. | |

    I, Purvis Lamar Ellis, and the United States Attorney's Office for the Northern District of California (hereafter "the government") enter into this written Plea Agreement (the "Agreement") pursuant to Rule 11(c)(1)(A) and 11(c)(1)(C) of the Federal Rules of Criminal Procedure:

The Defendant's Promises

    1.    I agree to plead guilty to Count One, Count Two, and Count Five of the captioned Indictment charging me as follows: Count One, Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d); Special Finding One, Conspiracy to Murder in violation of California Penal Code Sections 187,

PLEA AGREEMENT
*United States v. Ellis*, CR 13-818-001 PJH

1

1  188, 189, and 182; ~~Special Finding Two, Attempted First Degree Murder of Victim-1 in violation of~~
2  ~~California Penal Code Sections 187, 188, 189, 21a and 664~~; Count Two, Attempted Murder in Aid of
3  Racketeering in violation of 18 U.S.C. § 1959(a)(5); and Count Five, Use/Possession of a Firearm in
4  Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A).

I agree that the elements of the offenses are as follows:

**Count One: Racketeering Conspiracy**

(1) From at least in or about 2007 through and including December 2013, an enterprise existed, that is, a group of people associated together for a common purpose of engaging in a course of conduct over a period of time. The enterprise (a) had a purpose, (b) consisted of relationships among those associated with the enterprise, and (c) had longevity sufficient to permit the associates to pursue the enterprise's purpose;

(2) The enterprise or its activities affected or would affect interstate or foreign commerce;

(3) I was or would be associated with the enterprise; and

(4) I knowingly agreed that either I or another person would conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as follows: (a) at least two acts of racketeering were or would be committed, (b) the acts of racketeering had or would have a relationship to each other which posed a threat of continued criminal activity, and (c) the acts of racketeering embraced the same or similar purposes, results, participants, victims, or methods of commission, or were otherwise interrelated by distinguishing characteristics.

**Special Finding Number One: California Conspiracy to Murder**

(1) On or about January 20, 2013, there was an agreement between two or more persons to commit murder;

(2) I became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

(3) One of the members of the conspiracy performed at least one overt act in California on January 20, 2013, for the purpose of carrying out the conspiracy.

**Count Two: Attempted Murder in Aid of Racketeering**

(1) From at least in or about 2007 through and including December 2013, the enterprise existed, as previously defined;

(2) The enterprise or its activities affected or would affect interstate or foreign commerce;

(3) The enterprise engaged in racketeering activity, as previously defined;

(4) On or about January 20, 2013, the crime of attempted murder was committed by a member of the enterprise;

(5) I aided, counseled, commanded, induced or procured that person with respect to at least one element of the attempted murder;

(6) I acted with the intent to facilitate the attempted murder;

(7) I acted before the crime was completed; and

(8) My purpose in aiding and abetting the attempted murder was to gain entrance to, or to maintain, or to increase my position in the enterprise.

**Count Five: ~~Use/Possession~~ Discharge of a Firearm in Furtherance of a Crime of Violence**

(1) I committed the crime of Attempted Murder in Aid of Racketeering, which is a crime of violence;

(2) I knowingly aided and abetted the ~~use~~ discharge of a firearm, that is, I aided and abetted another to actively employ a firearm, during and in relation to that crime.

I agree that the maximum penalties for these offenses are as follows:

**Count One: Racketeering Conspiracy and Special Findings**

    a. Maximum prison term    life

    b. Maximum fine    $250,000

    c. Maximum supervised release term    5 years

    d. Mandatory special assessment    $100

**Count Two: Attempted Murder in Aid of Racketeering**

    a. Maximum prison term    10 years

    b. Maximum fine    $250,000

    c. Maximum supervised release term    3 years

|   |   |   |
|---|---|---|
| d. | Mandatory special assessment | $100 |

**Count Five: Discharge Firearm During and In Relation to Crime of Violence**

|   |   |   |
|---|---|---|
| a. | Maximum prison term | life |
| b. | Minimum prison term | 10 years |
| c. | Maximum fine | $250,000 |
| d. | Maximum supervised release term | 5 years |
| e. | Mandatory special assessment | $100 |

I understand that under 18 U.S.C. § 924(c), I am subject to a mandatory consecutive sentence of 10 years of imprisonment for that violation in addition to any sentence I may receive for the other violations to which I am pleading guilty.

I understand that I am pleading guilty to multiple violations and that the Court may order that my sentence for each violation be run consecutively.

2.  I agree that I am guilty of the offenses to which I am pleading guilty, and I agree that the following facts are true:

   From December, 2012 through December, 2013, I associated in fact with others from my neighborhood in Oakland known as Sem City. Those individuals and I were members of a racketeering enterprise.

   From December 2012 until the end of January, 2013, the enterprise used 1759 Seminary Avenue as its headquarters or clubhouse, even though all the members of the enterprise did not live there full-time. The members of the enterprise associated with one another for the purpose of, among other things, protecting one another from outside threats, protecting one another from rivals who might challenge our money-making operations, and preserving out reputations and that of the enterprise by, among other things, retaliating against rivals who disrespected or harmed one of us or our allies. Although we each pursued individual money-making schemes, the relationships between those associated with the enterprise was such that I knew the other members of the gang would come to my aid if I was attacked, robbed, or disrespected by a rival. I had relationships with the other members of the gang, and we associated together to fulfill the purposes of the gang until I was arrested in early 2013.

   One way we fulfilled the purposes of the enterprise was by sharing firearms. I possessed firearms at the 1759 Seminary Avenue apartments and permitted other members of the enterprise to use them to protect themselves and others, including me. Firearms were hidden in various strategic locations at the Seminary apartments for this purpose. I kept other firearms hidden in my apartment or in a briefcase on the roof of the building, including an Uzi semi-automatic firearm, Glock pistols, and a .38 caliber pistol. Members of the enterprise used these firearms in order to fulfill the enterprise's purposes. We used 1759 Seminary as a safe haven, and we occasionally shared proceeds from our respective money-making schemes.

   I agreed that either I or another member of the enterprise would participate in the affairs of the enterprise through a pattern of racketeering activity. That is, I agreed to participate in the enterprise with the knowledge and intent that at least one member of the enterprise would

commit two or more acts of attempted murder, murder, drug sales, robbery, or credit card fraud.

On January 20, 2013, I was driving a rental car provided by another member of the enterprise. When I passed the intersection of Foothill Boulevard and Seminary Avenue in Oakland, I turned left onto Kingsley Circle, stopped the car, and dropped off a fellow member of the enterprise. Another enterprise member met us there. I knew both men were armed, that they would attempt to kill a rival, and that I would pick them up afterwards. I then continued down Kingsley Circle, turned left on Walnut Street, and returned to Seminary Avenue where three members of the enterprise (including the man I dropped off near the intersection and the man that he met there) got into my car, and I drove back to 1759 Seminary Avenue. At least a substantial purpose of the shooting was to maintain my status in the enterprise or was an integral aspect of membership in the enterprise.

I agree the evidence reflects that at least some of the firearms I possessed on behalf of the enterprise were manufactured outside of California. I further agree that the evidence indicates that the enterprise's activities did or would affect interstate or foreign commerce.

3. I agree to give up all rights that I would have if I chose to proceed to trial, including the rights to a jury trial with the assistance of an attorney; to confront and cross-examine government witnesses; to remain silent or testify; to move to suppress evidence or raise any other Fourth or Fifth Amendment claims; to any further discovery from the government; and to pursue any affirmative defenses and present evidence.

4. I agree to give up my right to appeal my conviction, the judgment, and orders of the Court, as well as any aspect of my sentence, including any orders relating to forfeiture and/or restitution, except that I reserve my right to claim that my counsel was ineffective.

5. I agree not to file any collateral attack on my conviction or sentence, including a petition under 28 U.S.C. § 2255 or 28 U.S.C. § 2241, except that I reserve my right to claim that my counsel was ineffective. I also agree not to seek relief under 18 U.S.C. § 3582.(c)(2)

6. I agree not to ask the Court to withdraw my guilty pleas at any time after they are entered. I understand that by entering into this Agreement: (a) I agree that the facts set forth in Paragraph 2 of this Agreement shall be admissible against me under Fed. R. Evid. 801(d)(2)(A) in any subsequent proceeding, including at trial, in the event I violate any of the terms of this Agreement, and (b) I expressly waive any and all rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 with regard to the facts set forth in Paragraph 2 of this Agreement in such subsequent proceeding. I understand that the government will not preserve any physical evidence obtained in this case.

7. I understand that the Court must consult the United States Sentencing Guidelines and

take them into account when sentencing, together with the factors set forth in 18 U.S.C. § 3553(a). I agree that the Sentencing Guidelines offense level will be calculated as follows and that I will not ask for any other adjustment to, or reduction in, the offense level or for a downward departure or variance from the offense level and Guidelines range as determined by the Court. The parties have reached no agreement regarding my Criminal History Category.

<u>Group 1 – Counts One and Two: Racketeering Conspiracy and VICAR Attempted Murder</u>

| | |
|---|---:|
| a. Base Offense Level, U.S.S.G. § 2E1.1(a)(2) (the offense level applicable to the underlying racketeering activity, in this case Attempted Murder U.S.S.G. § 2A2.1) | 33 |
| b. Special Offense Characteristic § 2A2.1(b)(1)(A) (victim sustained permanent or life-threatening bodily injury) | 4 |
| c. Acceptance of Responsibility: | - 3 |
| If I meet the requirements of U.S.S.G. § 3E1.1, I may be entitled to a two/three-level reduction for acceptance of responsibility, provided that I forthrightly admit my guilt, cooperate with the Court and the Probation Office in any presentence investigation ordered by the Court, and continue to manifest an acceptance of responsibility through and including the time of sentencing. | |
| d. Global Resolution Adjustment (if applicable, see paragraph 8) | - 1 |
| e. Adjusted Offense Level (Group 1 only): | 33 |

<u>Non-Grouping – Count Five: Discharge Firearm During Crime of Violence</u>

Statutory Mandatory Consecutive     10 yrs

8. The Global Disposition Reduction of one point off the otherwise applicable Guidelines calculation is conditioned upon all of the defendants listed below (the "covered defendants") entering guilty pleas, on or before September 22, 2017. The covered defendants are:

    (a)    PURVIS LAMAR ELLIS, a/k/a "Bot,"
    (b)    DEANTE TERRANCE KINCAID, a/k/a "Tay Tay,"
    (c)    JOSEPH PENNYMON, a/k/a "Junkie,"

If fewer than all the covered defendants enter guilty pleas before the deadline, the United States may, in its sole discretion:

    (a)    elect to void any or all of the covered defendants' plea agreements and proceed to

trial; or

    (b)    elect not to recommend a reduction under the Guidelines for a global disposition. Under this circumstance, no covered defendant will have the right to withdraw his guilty plea.

9. I agree that a reasonable and appropriate disposition of this case under the Sentencing Guidelines and 18 U.S.C. § 3553(a), and the sentence to which the parties have agreed is a total of 20 years' imprisonment (10 years of which is attributable to Count Five); a five year term of supervised release; $300 in special assessments; and forfeiture.

10. I agree that regardless of any other provision of this Agreement, the government may and will provide the Court and the Probation Office with all information relevant to the charged offense and the sentencing decision. I agree that, based on the nature of the offense and my criminal history, the Court should impose the following special condition of supervised release which is reasonably related to deterrence and rehabilitation:

<u>Special Condition (Searches)</u>
The defendant shall submit his person, residence, office, vehicle, electronic devices and their data (including cell phones, computers, and electronic storage media), and any property under defendant's control to a search. Such a search shall be conducted by a United States Probation Officer or any federal, state, or local law enforcement officer at any time, with or without suspicion. Failure to submit to such a search may be grounds for revocation; the defendant shall warn any residents that the premises may be subject to searches.

11. I agree that I will make a good-faith effort to pay any fine, forfeiture, or restitution I am ordered to pay. I agree to pay the special assessment at the time of sentencing.

12. I agree not to commit or attempt to commit any crimes before sentence is imposed or before I surrender to serve my sentence. I also agree not to violate the terms of my pretrial release; not to intentionally provide false information to the Court, the Probation Office, Pretrial Services, or the government; and not to fail to comply with any of the other promises I have made in this Agreement. I agree not to have any contact with any victims or witnesses in this case, either directly or indirectly, before and after I am sentenced. This includes, but is not limited to, personal contact, telephone, mail, or electronic mail contact, or any other written form of communication, and includes any harassing, annoying, or intimidating conduct by me directed to any victims or witnesses. I agree that the Court may

also include this no-contact provision as a condition of my supervised release term. I agree that if I fail to comply with any promises I have made in this Agreement, then the government will be released from all of its promises in this Agreement, including those set forth in the Government's Promises Section below, but I will not be released from my guilty plea.

I agree to remain in the custody of the United States Marshal immediately upon entry of my guilty plea pursuant to 18 U.S.C. § 3143(a)(2).

13. I agree to abandon any interest that I may have and consent to the forfeiture, destruction and/or any other lawful and appropriate disposition of all firearms or contraband seized by any law enforcement agency from my possession, or which were in my direct or indirect control, including but not limited to firearms used in the commission of the offenses and all controlled substances seized from me.

14. I agree that this Agreement contains all of the promises and agreements between the government and me, and I will not claim otherwise in the future. No modification of this Agreement shall be effective unless it is in writing and signed by all parties.

15. I agree that the Agreement binds the U.S. Attorney's Office for the Northern District of California only, and does not bind any other federal, state, or local agency.

The Government's Promises

16. The government agrees to move to dismiss any open charges pending against the defendant in the captioned Indictment at the time of sentencing.

17. The government agrees not to file any additional charges against the defendant that could be filed as a result of the investigation in this case.

18. The government agrees that the reasonable and appropriate sentence in this case is as set forth in paragraph 9 above, unless the defendant violates the terms of the Agreement or fails to accept responsibility.

The Defendant's Affirmations

19. I agree that my participation in the District Court's Conviction Alternative Program is not appropriate and that I will not request to be considered for and will not participate in that program as a result of my convictions for these offenses.

20. I confirm that I have had adequate time to discuss this case, the evidence, and the

Agreement with my attorney and that my attorney has provided me with all the legal advice that I requested.

21. I confirm that while I considered signing this Agreement, and at the time I signed it, I was not under the influence of any alcohol, drug, or medicine that would impair my ability to understand the Agreement.

22. I confirm that my decision to enter a guilty plea is made knowing the charges that have been brought against me, any possible defense, and the benefits and possible detriments of proceeding to trial. I also confirm that my decision to plead guilty is made voluntarily, and no one coerced or threatened me to enter into this Agreement.

Dated: 9/21/17

PURVIS LAMAR ELLIS
Defendant

BRIAN J. STRETCH
United States Attorney

Dated: 9/21/17

JOSEPH M. ALIOTO JR.
Assistant United States Attorney

23. I have fully explained to my client all the rights that a criminal defendant has and all the terms of this Agreement. In my opinion, my client understands all the terms of this Agreement and all the rights my client is giving up by pleading guilty, and, based on the information now known to me, my client's decision to plead guilty is knowing and voluntary.

Dated: 9/21/17

MARTHA BOERSCH
Attorney for Defendant